**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 9:24-cv-81472-Rosenberg/Reinhart
Case No. 9:25-cv-80053-Middlebrooks

| | |
|---|---|
| SHELBY TOWNSHIP POLICE & FIRE RETIREMENT SYSTEM, on Behalf of Itself and All Others Similarly Situated, | <u>CLASS ACTION</u> |
| Plaintiff, | |
| v. | |
| CELSIUS HOLDINGS, INC., JOHN FIELDLY, and JARROD LANGHANS, | |
| Defendants. | |
| ANTHONY M. ABRAHAM, Individually and on Behalf of All Others Similarly Situated, | <u>CLASS ACTION</u> |
| Plaintiff, | |
| v. | |
| CELSIUS HOLDINGS, INC., JOHN FIELDLY, and JARROD LANGHANS, | |
| Defendants. | |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION OF GARY J. VUCEKOVICH AND THE VUCEKOVICH FAMILY 678 TRUST FOR CONSOLIDATION OF THE ACTIONS, APPOINTMENT AS LEAD PLAINTIFF, AND <u>APPROVAL OF SELECTION OF COUNSEL</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ............................................................................................... 1

STATEMENT OF FACTS .................................................................................................... 2

PROCEDURAL HISTORY................................................................................................... 6

ARGUMENT...................................................................................................................... 6

    I.       CONSOLIDATION OF THE ACTIONS IS APPROPRIATE ....................................... 6

    II.      APPOINTING MOVANT AS LEAD PLAINTIFF IS APPROPRIATE........................ 7

        A.      The Procedure Required by the PSLRA .................................................................. 7

        B.      Movant Satisfies the Lead Plaintiff Provisions of the PSLRA ................................... 8

            1.    Movant Timely Filed His Application to Be Appointed Lead Plaintiff.................... 9

            2.    Movant Has the Largest Financial Interest in the Relief Sought by the Class.......... 9

            3.    Movant Satisfies the Requirements of Rule 23(a) .................................................. 10

                a.    Movant's Claims Are Typical of the Claims of the Class................................. 11

                b.    Movant Will Fairly and Adequately Protect the Interests of the Class.............. 11

    III.     APPROVING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE.................. 13

CONCLUSION.................................................................................................................. 13

## TABLE OF AUTHORITIES

**Cases**

*Biver v. Nicholas Fin., Inc*.,
  2014 WL 1763211 (M.D. Fla. Apr. 30, 2014) ........................................................................... 13

*Dillard v. Platform Specialty Products Corporation*,
  2016 WL 10586300 (S.D. Fla. June 30, 2016) ..................................................................... 10, 13

*Jahm v. Bankrate, Inc*.,
  2015 WL 13650037 (S.D. Fla. Jan. 16, 2015) ........................................................................... 11

*Miller v. Dyadic Intern., Inc., et al*.,
  2008 WL 2465286 (S.D. Fla. April 18, 2008) ..................................................................... 10, 11

*Mitchell v. Complete Mgmt., Inc*.,
  No. 99-CV-1454 (DAB), 1999 WL 728678 (S.D.N.Y. Sept. 17, 1999) ...................................... 7

*Mulvaney v. Geo Group, Inc.,*
  2016 WL 10519276 (S.D. Fla. Nov. 21, 2016) ..................................................................... 1, 11

*Newman v. Eagle Bldg. Techs*..
  209 F.R.D. 499 (S.D. Fla. 2002) ................................................................................................. 7

*In re Olsten Corp. Sec. Lit*.,
  3 F. Supp.2d 286 (E.D.N.Y. 1998) ............................................................................................. 7

*Prado-Steinman ex rel. Prado v. Bush*,
  221 F.3d 1266 (11th Cir. 2000) ................................................................................................. 11

*Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc*.,
  Nos. 07-81038-CIV, 07-14348, 2008 WL 1943955 (S.D. Fla. May 2, 2008) ........................... 10

*In re Sunbeam Sec. Litig*.,
  1998 WL 1990884 (S.D. Fla. Dec. 4, 1998) ............................................................................... 7

**Statutes**

15 U.S.C. § 78u- 4 ...........................................................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 ............................................................................................................. passim

Fed. R. Civ. P. 42(a) ................................................................................................................... 7

## PRELIMINARY STATEMENT

Gary J. Vucekovich, individually and on behalf of the Vucekovich Family 678 Trust, ("Movant") respectfully submits this memorandum of law in support of his motion for: (a) consolidation of the above-captioned actions (the "Actions"); (b) appointment as Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995, as amended (the "PSLRA"), 15 U.S.C. § 78u-4(a)(3)(B); (c) approval of his selection of Levi & Korsinsky LLP ("Levi & Korsinsky as Lead Counsel and Cullin O'Brien Law, P.A. ("Cullin O'Brien") as Liaison Counsel; and (d) for such other relief as the Court deems proper.

The Actions presently pending before this Court are brought on behalf of all purchasers of Celsius Holdings, Inc. ("Celsius" or the "Company") common stock or sold Celsius puts during the period between February 29, 2024 and September 4, 2024, inclusive (the "Class Period"). The plaintiffs in the Actions allege violations of the Securities Exchange Act of 1934 ("Exchange Act") against the Company, John Fieldly ("Fieldly"), and Jarrod Langhans ("Langhans") (collectively, the "Defendants").

The PSLRA provides that the Court appoint as lead plaintiff the movant with the largest financial interest in the litigation that has also made a prima facie showing that it is a typical with the other class members and an adequate class representative under Rule 23 of the Federal Rules of Civil Procedure ("Rule 23"). *See Mulvaney v. Geo Group, Inc.,* 2016 WL 10519276, *1 (S.D. Fla. Nov. 21, 2016).

Movant satisfies both requirements. Movant, with losses of approximately $2,894,699.20,[1] believes that he has the largest financial interest in the outcome of the Actions and also satisfies

---

[1] Movant's certification identifying his transactions in Celsius, as required by the PSLRA, as well as a chart detailing his losses, are attached to the Declaration of Cullin O'Brien, dated January 21, 2025 (the "O'Brien Declaration"), as Exhibits A and B, respectively.

the requirements of Rule 23 in that his claims are typical of the claims of the Class, and he will fairly and adequately represent the interests of the Class. Thus, Movant is the presumptive lead plaintiff under the PSLRA and should be appointed lead plaintiff.

## STATEMENT OF FACTS[2]

Through its operating subsidiaries, Celsius offers various products in the functional energy drink category in the United States and internationally. ¶ 18. The Company distributes its products through direct-to-store delivery, distributors, supermarkets, convenience stores, drug stores, nutritional stores, and mass merchants, as well as health clubs, gyms, the military, and e-commerce websites. *Id.*

One key aspect of Celsius' skyrocketing growth has been its long-term strategic partnership with PepsiCo, Inc. ("Pepsi"). ¶ 20. Specifically, on August 1, 2022, the Company entered into a long-term distribution agreement and a separate transition agreement with Pepsi (collectively, the "Distribution Agreement") through which Pepsi would tap into its extensive network of retail and foodservice channels to become the primary distributor of Celsius products in the United States and Celsius' exclusive distributor in Canada. *Id.*

The statements referenced above in ¶¶26-32 and 37-46 of the *Shelby* Complaint were materially false and misleading when made because they failed to disclose the following adverse facts which were known to defendants or recklessly disregarded by them, as follows: (a) Celsius materially oversold inventory to Pepsi far in excess of demand, and faced a looming sales cliff during which Pepsi would significantly reduce its purchases of Celsius products; (b) as Pepsi drew

---

[2] Citations to "¶ __" are to paragraphs of the Class Action Complaint (the "*Shelby* Complaint") filed in the first-filed action styled *Shelby Township Police & Fire Retirement System v. Celsius Holdings, Inc., et al.,* Case No. 9:24-cv-81472-Rosenberg/Reinhart (the "*Shelby* Action"). Unless otherwise defined, capitalized terms shall have the same meaning set forth in the *Shelby* Complaint. The facts set forth in the *Shelby* Action are incorporated herein by reference.

2

down significant amounts of inventory overstock, Celsius' sales would materially decline in future periods, hurting the Company's financial performance and outlook; (c) Celsius' sales rate to Pepsi was unsustainable and created a misleading impression of Celsius' financial performance and outlook; (d) as a result, Celsius' business metrics and financial prospects were not as strong as indicated in defendants' Class Period statements; and (e) as a result of the foregoing, defendants' statements regarding the Company's outlook and expected financial performance were false and misleading at all relevant times. ¶ 47.

The price of Celsius stock surprisingly dropped on May 27, 2024 as analysts and investors digested some of the latest retail store trends reported by Nielsen. ¶ 48. Morgan Stanley noted that Celsius' sales growth slowed sequentially in weekly retail data – slowing to 39% year-over-year in the week ended May 18, down from 50% in the week ended May 4 – that its market share dipped, and that pricing for Celsius' products was down 7.2% year-over-year. *Id.* Morgan Stanley cautioned that Celsius faced difficult sales comparisons over the next several quarters as it rolled over the anniversary of its Distribution Agreement with Pepsi. *Id.* Similarly, Stifel warned sales could be dramatically diminished as Pepsi reduced the amount of Celsius inventory it held, noting that Pepsi's reduction of its Celsius product inventories could result in "2Q24 sales below end-demand." *Id.*

In response to this news, the price of Celsius stock tumbled. ¶ 49. After closing at $95.15 on May 24, 2024, the price of Celsius stock fell $12.23 per share, or nearly 13%, to close at $82.92 per share on May 28, 2024 (the next trading day), on unusually high trading volume of nearly 17.5 million shares traded. *Id.*

On August 6, 2024, Celsius reported its second quarter 2024 ("2Q24") results, disclosing that revenue rose 23% year-over-year to $402 million, driven primarily by the North American

3

business, a 30% jump in international sales to $19.6 million, and sales to Amazon that increased 41% to approximately $39.9 million. ¶ 50. Amid the Company's seemingly positive results, Celsius disclosed that revenue in 2Q24 was offset in part by a reduction in inventory days by a large distributor – Pepsi. *Id.* Nevertheless, the Company's reported EPS of $0.28 (up 65%) beat Wall Street expectations of $0.23, and the more than $400 million in quarterly sales topped analysts' consensus expectations of $393 million. *Id.* Commenting on the results, Fieldly stated Celsius reported "'its best second quarter financial results ever, delivering records in revenue, gross profit and gross margin.'" *Id.* During the Company's 2Q24 earnings call, the Company noted there had been a macroeconomic slowdown in the energy drink category, but that "Celsius still grew at 10x the category growth rate in the second quarter" and that the Company was "moving aggressively to gain our growth and momentum," and that Celsius has "great programs for the back half of the third quarter and into the fourth quarter." *Id.*

Then, approximately one month later during the trading day on September 4, 2024, Fieldly and Celsius Chief of Staff Toby David ("David") presented at the Barclays 17th Annual Global Consumer Staples Conference. ¶ 53. During the conference, Fieldly discussed the Company's Distribution Agreement with Pepsi, and revealed that Celsius' sales to Pepsi were reduced from "roughly around [$]100 million to [$]120 million . . . from what [Pepsi] ordered last quarter." *Id.* Fieldly added Celsius was "still seeing these inventory levels being reduced" and that it had "increased" in the third quarter of 2024. *Id.* Adding on, David stated: "[J]ust to be precise with the [$]100 million to [$]120 million figure, . . . **we're seeing approximately [$]100 million to [$]120 million less in orders to Pepsi in Q3 this year versus Q3 last year.**" *Id.* David added that because Celsius recognizes revenue when Celsius products are delivered to Pepsi – not when sold in stores to consumers – that store-level sales were not capable of capturing the lost revenue. *Id.* David went

4

on to say: "What we are seeing correlate is depletions out of the Pepsi warehouse" which "simply means that ***they were holding to several million more cases over the past 1.5 years than they really needed to hold***, and they're optimizing their network now." *Id.* In other words, Celsius' sales to Pepsi far outstripped market demand for Celsius products, and Pepsi was drawing down excess inventory from its warehouses. *Id.* Without that excess inventory being sold to Pepsi, Celsius' reported financial results in prior periods would have been materially lower. *Id.*

While Celsius presented at the Barclays' conference, the price of Celsius stock dropped in tandem with the surprisingly negative news. ¶ 54. After opening at $36.50 per share, and reaching as high as $37.60 per share, the price of Celsius stock began slumping shortly after noon in response to Fieldly's and David's disclosures, declining 11.6% to close at $32.39 per share on unusually high trading volume of more than 18.6 million shares traded. *Id.*

Finally, before the opening of trading on November 6, 2024, Celsius reported its third quarter 2024 ("3Q24") results, disclosing the full unsustainable impact Pepsi's Class Period product loading had had on the Company's business metrics and financial prospects. ¶ 55. The press release issued that day quoted Fieldly lamenting the "'[p]ronounced supply chain optimization by'" Pepsi that he emphasized "'had an outsized and adverse impact on [Celsius'] operating results,'" while Langhans also lamented that Celsius' "'[g]ross and operating margins in the third quarter fell short due to significantly reduced orders because [its] largest distributor implemented a sizable . . . supply chain optimization program in the quarter.'" *Id.* As a result, Celsius' overall 3Q24 "revenue was approximately $265.7 million, compared to $384.8 million for the" 3Q23, a 31% decline, Celsius' North American revenues fell 33%, and its "'[r]evenue from [Pepsi] declined $123.9 million,'" while "[c]oncurrently, related retailer promotional allowances created revenue headwinds." Celsius disclosed that its 3Q24 "gross profit decreased

5

by $71.9 million, or 37%, to $122.2 million from $194.1 million" in the 3Q23, that its 3Q24 "[g]ross profit margin was 46.0% . . . , a 440 basis point decrease from 50.4% for the same period in 2023," and that the "decrease in gross profit was due to promotional allowances, incentives, and other billbacks as a percentage of gross revenue" resulting from Pepsi's drawdown. *Id.*

When trading resumed November 6, 2024, the market price of Celsius common stock on this news dropped approximately 5%, or another $1.69 per share, on unusually high volume of more than 22.5 million shares trading, or more than 3.5 times the average daily volume over the preceding 10 trading days. ¶ 56.

## PROCEDURAL HISTORY

Pending before this Court is the above-captioned *Shelby* Action against the Defendants. Plaintiff Shelby Township Police & Fire Retirement System ("Shelby Township") commenced the first-filed action on November 22, 2024. On that same day, counsel acting on Shelby Township's behalf published a notice on *Business Wire* announcing that a securities class action had been initiated against the Defendants. *See* O'Brien Decl., Ex. C ("Press Release").

On January 14, 2025, a substantially similar action was filed against Celsius in this Court, entitled *Abraham v. Celsius Holdings, Inc., et al.,* Case No. 9:25-cv-80053-Middlebrooks (the "*Abraham* Action"), expanding the Class Definition to include those who sold Celsius puts. Movant has requested consolidation of the *Shelby* and *Abraham* Actions.

## ARGUMENT

### I.   CONSOLIDATION OF THE ACTIONS IS APPROPRIATE

The PSLRA provides that "[i]f more than one action on behalf of a class asserting substantially the same claim or claims arising under this [sub-]chapter has been filed," the Court shall not make the determination of the most adequate plaintiff until "after the decision on the

motion to consolidate is rendered." 15 U.S.C. § 78u-4(a)(3)(B)(ii). Thereafter, the Court "shall appoint the most adequate plaintiff for the consolidated actions." *Id*.

Under Federal Rule of Civil Procedure 42(a), consolidation is appropriate when the actions involve common questions of law or fact. See Fed. R. Civ. P. 42(a). "Consolidation of shareholder class actions is recognized as benefitting the court and the parties by expediting pretrial proceedings, reducing case duplication, and minimizing the expenditure of time and money by all persons concerned." *Newman v. Eagle Bldg. Techs*. 209 F.R.D. 499, 501-02 (S.D. Fla. 2002) (citing *In re Olsten Corp. Sec. Lit*., 3 F. Supp.2d 286, 294 (E.D.N.Y. 1998)). Consolidation is particularly appropriate in securities class action litigation such as the Actions. *Id*. at 502. *See also Mitchell v. Complete Mgmt., Inc*., No. 99-CV-1454 (DAB), 1999 WL 728678, at *1 (S.D.N.Y. Sept. 17, 1999) ("In securities actions where the complaints are based on the same 'public statements and reports' consolidation is appropriate if there are common questions of law and fact ") (citation omitted); *In re Sunbeam Sec. Litig*., 1998 WL 1990884, *2 (S.D. Fla. Dec. 4, 1998). Courts thus routinely find that consolidating multiple securities cases is an efficient solution where the complaints arise generally from the same alleged false and misleading statements.

The Actions present similar factual and legal issues, as they all involve the same subject matter and are based on the same wrongful course of conduct asserted against the same defendants. Because the Actions arise from the same facts and circumstances and involve the same subject matter, consolidation under Rule 42(a) is appropriate. *See Eagle Bldg. Techs*., 209 F.R.D. at 501-02.

## II.   APPOINTING MOVANT AS LEAD PLAINTIFF IS APPROPRIATE

### A.  The Procedure Required by the PSLRA

The PSLRA establishes the procedure for appointment of the lead plaintiff in "each private

action arising under [the Exchange Act] that is brought as a plaintiff class action pursuant to the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a). The plaintiff who files the initial action must publish notice to the class within 20 days after filing the action, informing class members of their right to file a motion seeking appointment as lead plaintiff. 15 U.S.C. § 78u-4(a)(3)(A). The PSLRA requires the Court to consider within 90 days all motions filed within 60 days after publication of that notice by any person or group of persons who are members of the proposed class to be appointed lead plaintiff. 15 U.S.C. §§ 78u-(a)(3)(A)(i)(II) and (a)(3)(B)(i).

The PSLRA provides a presumption that the most "adequate plaintiff" to serve as lead plaintiff is the "person or group of persons" that:

(aa) has either filed the complaint or made a motion in response to a notice;

(bb) in the determination of the court, has the largest financial interest in the relief sought by the class; and

(cc) otherwise satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.

15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). The presumption may be rebutted only upon proof by a class member that the presumptively most adequate plaintiff "will not fairly and adequately protect the interests of the class" or "is subject to unique defenses that render such plaintiff incapable of adequately representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II).

As set forth below, Movant satisfies the foregoing criteria and is not aware of any unique defenses that defendants could raise against him. Therefore, Movant is entitled to the presumption that he is the most adequate plaintiff to represent the Class and, as a result, should be appointed lead plaintiff in the Actions.

**B. Movant Satisfies the Lead Plaintiff Provisions of the PSLRA**

As described in further detail below, Movant should be appointed lead plaintiff because he

8

satisfies all of the requirements set forth by the PSLRA. Movant filed a timely motion to be appointed lead plaintiff, to his knowledge holds the largest financial interest in the relief sought by the Class, and satisfies the typicality and adequacy requirements of Rule 23.

**1. Movant Timely Filed His Application to Be Appointed Lead Plaintiff**

On November 22, 2024, counsel in the *Shelby* Action caused a notice (the "Notice") to be published pursuant to Section 21D(a)(3)(A) of the Exchange Act, which announced that a securities class action had been filed against Celsius and certain of its officers, advising putative class members that they had until January 21, 2025 to file a motion seeking appointment as a lead plaintiff in the Actions.[3] Movant has reviewed the complaint filed in the *Shelby* Action and has timely filed this motion pursuant to the Notice.

**2. Movant Has the Largest Financial Interest in the Relief Sought by the Class**

According to 15 U.S.C. § 78u-4(a)(3)(B)(iii), the Court shall appoint as lead plaintiff the movant with the largest financial loss in the relief sought by the action. Damages are calculated under the PSLRA based on: (i) the difference between the purchase price paid for the shares and the average trading price of the shares during the 90-day period beginning on the date the information correcting the misstatement was disseminated; or (ii) the difference between the purchase price paid for the shares and the average trading price of the shares between the date when the misstatement was corrected and the date on which the plaintiff sold their shares, if they sold their shares before the end of the 90-day period. 15 U.S.C. § 78u-4(e).

During the Class Period, Movant purchased 275,680 shares, retained 243,775 shares of Celsius through the end of the Class Period at a cost of $10,540,977.94 in reliance upon the

---

[3] The *Shelby* Action was filed in this Court on November 22, 2024. On that same day, the Notice was published over *Business Wire*, a widely-circulated national wire service. *See* O'Brien Decl., Ex. C.

materially false and misleading statements issued by Defendants and, as a result, suffered a substantial loss of approximately $2,894,699.20. *See* O'Brien Decl., Ex. B. To the best of his knowledge, there is no other applicant who has sought, or is seeking, appointment as lead plaintiff that has a larger financial interest in this litigation. Accordingly, Movant is the presumptive lead plaintiff under the PSLRA.

### 3.   Movant Satisfies the Requirements of Rule 23(a)

In addition to possessing the largest financial interest in the outcome of the litigation, the lead plaintiff must also "otherwise satisfy the requirements of Rule 23 of the Federal Rules of Civil Procedure." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I)(cc). Rule 23(a) provides that a class may be certified only if the following four requirements are satisfied: (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative party are typical of the claims or defenses of the class; and the representative party will fairly and adequately protect the interests of the class. Of these four prerequisites, only two—typicality and adequacy—directly address the personal characteristics of the lead plaintiff movant. Consequently, in deciding a lead plaintiff motion, the Court should limit its inquiry to the typicality and adequacy prongs of Rule 23(a) and defer examination of the remaining requirements until a class certification motion is filed. *See Sheet Metal Workers Local 28 Pension Fund v. Office Depot, Inc.*, Nos. 07-81038-CIV, 07-14348, 2008 WL 1943955, at *2 (S.D. Fla. May 2, 2008); *Dillard v. Platform Specialty Products Corporation*, 2016 WL 10586300, *3 (S.D. Fla. June 30, 2016); *Miller v. Dyadic Intern., Inc., et al.*, 2008 WL 2465286, *6 (S.D. Fla. April 18, 2008) (considering only typicality and adequacy on a motion for designation as lead plaintiff); see generally Fed. R. Civ. P. 23(a)(3)-(4). At the lead plaintiff stage, a movant need only make a preliminary showing that he/she/it satisfies the typicality and adequacy requirements of

Rule. 23. *Id*.

As detailed below, Movant satisfies both the typicality and adequacy requirements of Rule 23, thereby justifying his appointment as lead plaintiff.

### a.  Movant's Claims Are Typical of the Claims of the Class

Under Rule 23(a)(3), the claims or defenses of the representative parties must be typical of those of the class. A plaintiff satisfies the typicality requirement if the plaintiff has: (a) suffered the same injuries as the absent class members; (b) the injuries are as a result of the same course of conduct by defendants; and (c) the plaintiff's claims are based on the same legal issues that prove the defendant's liability. *See Dyadic*, 2009 WL 2465286 at *6; *Geo Group, Inc*., 2016 WL 10519276, at *2 (citing *Dyadic*, 2008 WL 2465286, at *6). Rule 23 does not require that the named plaintiffs be identically situated with all class members. It is enough if their situations share a common issue of law or fact. See *Prado-Steinman ex rel. Prado v. Bush*, 221 F.3d 1266, 1279 & n.14 (11th Cir. 2000) (finding typicality satisfied as long as the named plaintiffs share the "same essential characteristics of the claims" as the class).

Movant meets the typicality requirement of Rule 23. Movant, like the other members of the Class, acquired Celsius common stock or sold puts during the Class Period at prices artificially inflated by the Defendants' materially false and misleading statements, and was damaged thereby. Thus, his claims are typical, if not identical, to those of the other members of the Class. Accordingly, Movant satisfies the typicality requirement of Rule 23(a)(3). *See Jahm v. Bankrate, Inc.*, 2015 WL 13650037, *2 (S.D. Fla. Jan. 16, 2015).

### b.  Movant Will Fairly and Adequately Protect the Interests of the Class

Movant is an adequate representative for the Class. Under Rule 23(a)(4), representative parties must also "fairly and adequately protect the interests of the class." Adequate representation

11

will be found if the representative has: (a) retained able and experienced counsel; and (b) the representative has no fundamental conflicts of interest with the interests of the class as a whole. Fed. R. Civ. P. 23(a)(4). The PSLRA directs the Court to limit its inquiry regarding the adequacy of the movant to whether the interests of the movant are clearly aligned with the members of the putative Class and whether there is evidence of any antagonism between the interests of the movant and other members of the Class. 15 U.S.C. § 78u-4(a)(3)(B).

Movant's interests are aligned with those of the other members of the Class. Not only is there no evidence of antagonism between Movant and the other Class members, but Movant has a significant, compelling interest in prosecuting the Actions to a successful conclusion based upon the very large financial losses he has suffered as a result of the wrongful conduct alleged in these Actions. This motivation, combined with Movant's identical interest with the members of the Class, demonstrates that Movant will vigorously pursue the interests of the Class. In addition, Movant has selected a law firm to represent him and the Class that are highly experienced in prosecuting securities class actions.

In sum, because of Movant's common interests with the Class members, his clear motivation and ability to vigorously pursue the Actions, and his competent counsel, the typicality and adequacy requirements of Rule 23(a)(3) and (4) are met. Because Movant meets those typicality and adequacy requirements and has sustained the largest amount of losses from Defendants' alleged wrongdoing, Movant is the presumptive Lead Plaintiff in accordance with 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I), and should be appointed as such to lead the Actions.

Moreover, Mr. Vucekovich considers himself to be a sophisticated investor, having been investing in the stock market for 25 years. He resides in McKinney, Texas, and possesses a Bachelor of Arts degree. He is currently retired, but prior to that he was President of ForeSight

Services Group, Inc. McKinney, TX. Further, he has experience overseeing attorneys, as he has hired attorneys for business-related matters. Mr. Vucekovich is the trustee of the Vucekovich Family 678 Trust (the "Trust"). As trustee, he is individually authorized to act on behalf of the Trust in all respects, including this lawsuit. All transactions in Celsius made in the Trust's account that are the subject of the Actions were executed by Mr. Vucekovich. Mr. Vucekovich also individually invested in Celsius. Therefore, Movant will prosecute the Actions vigorously on behalf of the Class. *See* O'Brien Decl., Ex. D, Movant's Declaration in support of his motion.

Accordingly, Movant meets the adequacy requirement of Rule 23.

## III.   APPROVING MOVANT'S CHOICE OF COUNSEL IS APPROPRIATE

The PSLRA vests authority in the lead plaintiff to select and retain lead counsel, subject to Court approval. 15 U.S.C. § 78u-4(a)(3)(B)(v). The Court should interfere with the lead plaintiff's selection of counsel only when necessary "to protect the interests of the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(aa).

Movant has selected and retained Levi & Korsinsky as the proposed Lead Counsel for the Class and Cullin O'Brien as proposed Liaison Counsel. Each firm has extensive experience in successfully prosecuting complex securities class actions such as this one and are well-qualified to represent the Class. *See* O'Brien Decl., Exhibits E and F (firm résumés of proposed counsel). Thus, the Court should approve Movant's choice of counsel. See, e.g., *Dillard*, 2016 WL 10586300, at *4 (approving and appointing movant's choice of co-lead counsel); *Biver v. Nicholas Fin., Inc.*, 2014 WL 1763211, at *7 (M.D. Fla. Apr. 30, 2014) (same).

## CONCLUSION

For the foregoing reasons, Movant respectfully requests that this Court: (1) consolidate the Actions; (2) appoint Movant as Lead Plaintiff for the Class in the Actions; (3) approve Levi &

Korsinsky as Lead Counsel and Cullin O'Brien as Liaison Counsel for the Class; and (4) grant

such other relief as the Court may deem proper.

Dated: January 21, 2025                   Respectfully submitted,

*/s/ Cullin O'Brien*
Cullin O'Brien
Florida Bar No. 0597341
**CULLIN O'BRIEN LAW, P.A.**
6541 NE 21st Way
Fort Lauderdale, Florida 33308
Tel: (561) 676-6370
Fax: (561) 320-0285
E-mail: cullin@cullinobrienlaw.com

*Proposed Liaison Counsel for Movant Gary J.*
*Vucekovich, individually and on behalf of the*
*Vucekovich Family 678 Trust and the Class*

Adam M. Apton (*pro hac vice* forthcoming)
**LEVI & KORSINSKY, LLP**
33 Whitehall Street, 17th Floor
New York, NY 10004
Tel: (212) 363-7500
Fax: (212) 363-7171
Email: aapton@zlk.com

*Proposed Counsel for Gary J.*
*Vucekovich, individually and on behalf of the*
*Vucekovich Family 678 Trust and the Class*

14

## **CERTIFICATE OF SERVICE**

I HEREBY certify that on January 21, 2025, I electronically filed the foregoing document

with the Clerk of the Court CM/ECF.

*/s/ Cullin O'Brien*
Cullin O'Brien