# EXHIBIT A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X    **Docket No.:**

AMY MILLER,

                    Plaintiff,

       -against-

LEVI & KORSINSKY, LLP, EDUARD KORSINSKY
and JOSEPH LEVI,

                  Defendants.
-------------------------------------------------------------X

**COMPLAINT**

**JURY TRIAL REQUESTED**

Plaintiff, **AMY MILLER**, by her attorneys, **MADUEGBUNA COOPER, LLP**, for her complaint herein alleges:

## I.      THE NATURE OF THIS ACTION

1. This action is for declaratory judgment and money damages to remedy discrimination on the basis of sex, familial status and caregiver status in the terms, conditions and privileges of employment under Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000 *et seq.* ("Title VII"); the Fair Labor Standards Act of 1938, as amended by the Equal Pay Act of 1963, 29 U.S.C. § 206, *et seq.* ("Equal Pay Act"); the New York Equal Pay Law, N.Y. Labor Law § 194; the New York Human Rights Law as contained in New York State Executive Law, § 296 *et seq.* ("NYSHRL"); and, the New York City Human Rights Law as contained in the Administrative Code of the City of New York, § 8-107 *et seq.* ("NYCHRL").

2. Plaintiff contends that due to her sex, familial status and caregiver status, her employment relationship with Defendant LEVI & KORSINSKY, LLP ("L&K") was adversely affected, and her employment was eventually unjustifiably terminated on March 28, 2019, and in retaliation for her complaints of unequal pay due to her gender.

3. Specifically, Plaintiff, an accomplished attorney with an extensive background in

securities and shareholder derivative litigation and who was a Partner with Defendant L&K, contends that due to her sex, familial status and caregiver status, (i) she was not paid commissions on legal fees, unlike male Partners; (ii) received annual bonuses that were equal to or lower than bonuses received by male Associate attorneys she supervised; (iii) faced sexist and discriminatory comments, including being asked whether her husband should negotiate compensation on her behalf; (iv) was stripped of handling complex cases that were reassigned to male Associate attorneys with far less experience and who then relied on Plaintiff for advice and guidance; and, (v) was terminated on March 28, 2019 for vague and conclusory reasons that were a pretext for unlawful considerations of sex, familial status and caregiver status, and in retaliation for her complaints of unequal pay due to her gender.

## II.   JURISDICTION AND VENUE

4.     This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1343.

5.     This Court has supplemental jurisdiction over the state and city causes of action plead.

6.     Venue is proper in this district under 28 U.S.C. § 1391(b) because the underlying events took place in this district.

## III.   PROCEDURAL REQUIREMENTS

7.     Immediately after filing this action, Plaintiff will serve a copy of the complaint upon the New York City Commission of Human Rights and the Corporation Counsel of the City of New York, in accordance with New York City Administrative Code Section 8-502(c).

8.     Charges of discrimination have been filed with the U.S. Equal Employment Opportunity Commission ("EEOC") pursuant to Title VII.

9. The EEOC issued a Right to Sue Notice to Plaintiff on November 20, 2019, which Plaintiff received on or around November 22, 2019.

10. This lawsuit was commenced within 90 days of Plaintiff receiving the Right to Sue Notice.

## IV. PARTIES

11. Plaintiff is a 47 year-old married female, and a mother of two children.

12. At all relevant times, Plaintiff was a resident of the City and State of New York.

13. At all times relevant, Plaintiff was an "employee" of Defendant L&K, as defined by the Equal Pay Act.

14. Plaintiff was continuously employed by Defendant L&K from August 2016 to December 2017, in the position of Of Counsel, and from December 2017 until her unlawful termination on March 28, 2019 as a Partner and "head" of the Derivative Department in L&K's New York office (the "NY Derivative Department").

15. At all relevant times, Defendant L&K was a New York based law firm with a principal office currently located at 55 Broadway, 10th Floor, New York, New York.

16. Defendant L&K primarily engaged in securities and derivative litigation.

17. At all times relevant, Defendant L&K was an "employer" under the Equal Pay Act and New York Equal Pay Law.

18. At all relevant times, Defendant EDUARD KORSINSKY ("KORSINSKY") was (and is) a Founding Partner and Managing Partner of Defendant L&K.

19. Defendant KORSINSKY is a white male.

20. At all relevant times, Defendant JOSEPH LEVI ("LEVI") was (and is) a Founding Partner and Managing Partner of Defendant L&K.

- 3 -

21. Defendant LEVI is a white male.

22. At all relevant times, KORSINSKY and LEVI were responsible for, and made, personnel decisions in the New York office of Defendant L&K, including the decisions to promote an attorney to Partner; determine compensation structures for Partners; pay Plaintiff equal salary for equal work; grant bonuses to employees; assign and reassign cases and terminate employees.

23. During the relevant time, each Defendant was charged with ensuring that its employees, such as Plaintiff, were not subjected to discrimination on the basis of sex, familial status or caregiver status, or retaliation for engaging in protected activity.

24. At all relevant times, Defendants aided and abetted the discriminatory acts of each other taken against Plaintiff.

25. At all times relevant, each of the individual defendants was an "employer" under the Equal Pay Act and the New York Equal Pay Law and controlled significant functions of the business of Defendant L&K, determined salaries, and made hiring decisions.

## V. **FACTS COMMON TO ALL CAUSES OF ACTION**

*Plaintiff's Skill, Qualifications and Background:*

25. Plaintiff holds a *magna cum laude* Bachelor of Arts degree from Boston University.

26. In 2001, Plaintiff graduated *summa cum laude* from New York Law School.

27. Plaintiff is an attorney, and has been licensed to practice law in the State of New York since 2002.

28. Plaintiff has achieved a long and distinguished legal career within the State of New York, and in other jurisdictions around the country.

29.     In September 2001, Plaintiff became a Litigation Associate with Cadwalader, Wickersham & Taft LLP, where she litigated sophisticated business disputes, including securities, corporate governance, complex commercial litigation and governmental investigations, and participated in all phases of litigation.

30.     In March 2009, Plaintiff became a Senior Litigation Associate with Bernstein Litowitz Berger & Grossmann LLP, and was promoted to Senior Counsel in December 2011, where she handled multiple stockholder class actions and derivative lawsuits involving corporate governance, breach of contract and securities issues.

31.     In June 2014, Plaintiff moved to Grant & Eisenhofer, P.A. to work as Senior Counsel, and prosecuted stockholder class actions, derivative lawsuits and appraisal proceedings.

32.     In August 2016, Plaintiff began working with Defendant L&K as Of Counsel, and was promoted to Partner in December 2017.

33.     As a Partner at L&K, Plaintiff led the firm's corporate governance practice and represented institutional and individual stockholders in derivative lawsuits, class actions, investigations and appraisal proceedings, and reported primarily to KORSINSKY.

34.     Plaintiff was also responsible for supervising Associates and support staff, organizing strategy for the development and management of cases, and engaging in client development and retention.

35.     Since Plaintiff joined Defendant L&K in August 2016, her performance was outstanding, leading to her promotion to Partner in December 2017.

36.     Although Plaintiff's performance was outstanding, since August 2016 until December 2017, KORSINSKY made inappropriate, sexist and discriminatory comments,

including that Plaintiff should use her sex as a basis to promote herself in the legal community, rather than her clearly exceptional legal skills.

*KORSINSKY Offers Promotion but Fails to Increase Plaintiff's Salary:*

37.     During a meeting, in mid-December 2017, Plaintiff was offered a Partner position by KORSINSKY, who promised they would further discuss and put the terms of Plaintiff's compensation in writing in 2018.

38.     The terms of Plaintiff's compensation were never reduced to writing by KORSINSKY and L&K. As such, despite her promotion, outstanding performance as Partner, and increased responsibilities related to her new position, from mid-December 2017 until her unlawful termination on March 28, 2019, Plaintiff continued to receive the same and lesser compensation under the written contract with Defendant L&K for her Of Counsel position.

*Plaintiff is Promised Commissions as Offered to her Comparable Male Partners with L&K:*

39.     Also, during the mid-December 2017 meeting, KORSINSKY told Plaintiff that certain male Partners, including Donald Enright and Nicholas Porritt in L&K's Washington D.C. office, as part of their partnership agreements with L&K, earned "commissions" from their own cases on top of a base salary.

40.     These commissions to male partners, such as Partners Enright and Porritt, represented a percentage of the total fees paid to L&K on cases handled by each individual male Partner.

41.     KORSINSKY further explained that no Partner received an annual bonus based on L&K's performance as a whole.

42. Although some of the cases assigned to Partners Enright and Porritt were primarily managed and controlled by Senior Associates and one female Partner in the Washington D.C. office, they still earned credit and commissions if the cases earned legal fees.

43. At all material times, Partners Enright and Porritt performed duties and responsibilities similar to Plaintiff.

*Plaintiff Receives the Same Bonus as One of Her Male Subordinate Associates:*

44. During the same December 2017 meeting where Plaintiff was offered a Partner position, KORSINSKY told her that she would receive a $30,000.00 bonus for 2017. Plaintiff immediately told KORSINSKY the bonus was too low for the outstanding work she performed in 2017, which had led to her being offered a Partner position.

45. Also, at the same December 2017 meeting, Plaintiff asked KORSINSKY if she would be entitled to a "commission" if one of her cases paid L&K a fee prior to the end of 2018. KORSINSKY responded that she would be entitled to such commission, and that he would further discuss the specific terms of Plaintiff's partnership agreement in 2018 and ended the meeting.

46. Despite Plaintiff's protestations, her bonus for 2017 remained at $30,000.00.

47. Plaintiff later learned, in or around August 2018, that her bonus for 2017 was the same as the bonus awarded to Will Fields, a male Associate who worked under and for Plaintiff.

*Plaintiff is Considered the "Head" of the New York Derivative Department:*

48. After three months of working as a Partner, in or around March 2018, KORSINSKY told Plaintiff he considered her the "head" of the NY Derivative Department.

49. As head of the NY Derivative Department, KORSINSKY explained that he expected Plaintiff to run the department and provide him with reports related to the department's cases, including fee projections.

50. In keeping with KORSINSKY's instructions, Plaintiff managed her department the same way that Messrs. Enright and Porritt did in the Washington D.C. office, with Plaintiff focusing most of her time on the department's more complex cases, and providing guidance and advice to the Associates handling lower-level cases beneath her.

51. Every month, Plaintiff sent KORSINSKY and LEVI charts that she created to track the NY Derivative Department's cases, including cases that were mostly being handled by her Associates.

52. Further to her discussions with KORSINSKY in or around December 2017, Plaintiff believed that he would fulfill his promise and put the terms of her compensation as Partner in writing.

53. Plaintiff also expected that she would soon begin to earn commissions from the cases originating in the NY Derivative Department, as KORSINSKY had explained.

54. Despite KORSINSKY's promises, until Plaintiff's unlawful termination on March 28, 2019, KORSINSKY failed to put the terms of Plaintiff's compensation in writing or pay Plaintiff her duly earned commissions.

*Plaintiff is Denied Commissions on a Derivative Case Against Fox News:*

55. As of April 2018, Plaintiff was managing and working extensively on a derivative case against Twenty-First Century Fox, Inc.'s board of directors (the "Fox News Derivative Case").

56.     As a result of Plaintiff's and her co-counsel's efforts, the Fox News Derivative Case settled for $90 million, and brought in a significant legal fee for Defendant L&K.

57.     Plaintiff reasonably expected to receive a commission from the fee on the Fox News Derivative Case, but did not, as defendants failed to pay.

58.     In April and May 2018, Plaintiff had multiple conversations with Svetlana Mayzus, the head of Defendant L&K's Human Resources office, about payment of the Fox News Derivative Case commission and Plaintiff's still outstanding written Partner contract.

59.     Ms. Mayzus confirmed to Plaintiff that she should indeed receive a commission from the Fox News Derivative Case and be compensated the same as Messrs. Enright and Porritt in the Washington D.C. office.

*KORSINSKY Makes Discriminatory Statements to Plaintiff:*

60.     On or around May 16, 2018, after Plaintiff's numerous discussions with Ms. Mayzus, Plaintiff met with KORSINSKY to again discuss the terms of her compensation and request to begin receiving commissions like her male counterparts – Messrs. Enright and Porritt – who handled duties and responsibilities similar to Plaintiff's.

61.     During the meeting, KORSINSKY made explicit discriminatory comments to Plaintiff on the basis of her sex, and asked whether Plaintiff's husband had directed her to request additional compensation.

62.     Specifically, KORSINSKY said he felt like there was "a third person in the room" telling Plaintiff to make the compensation request, and that this "third person" was Plaintiff's husband.

Case 1:20-cv-01590 Document 1 Filed 02/18/20 Page 10 of 26

63. As if these sexist comments were not enough, KORSINSKY asked Plaintiff if she wanted to call her husband and have him handle the discussions relating to Plaintiff's compensation.

64. The meaning and intent of KORSINSKY's insulting and discriminatory statements were clear – that Plaintiff, a highly accomplished and respected attorney, was incapable of discussing money and depended on her husband to swoop in and handle the discussions on her behalf.

65. Plaintiff, understandably outraged and offended, told KORSINSKY that she felt as such, and stated that her husband had no involvement and did not need to be involved.

66. Although Plaintiff had been subjected to such outrageous and discriminatory statements, she presented KORSINSKY with her proposal for her Partner compensation, which included a 15% commission on any fee earned from the NY Derivative Department cases, and a 10% commission for any fee earned by L&K using any of Plaintiff's clients for cases not in her department.

67. Despite having told Plaintiff she would receive commissions in or around December 2017, and Messrs. Enright and Porritt having similar compensation plans, KORSINSKY told Plaintiff that he needed to speak with LEVI and obtain profit and loss ("P/L") numbers to see if she was entitled to commissions.

*KORSINSKY Makes More Discriminatory Statements to Plaintiff:*

68. In or around July 2018, Plaintiff met with KORSINSKY to continue their discussions on her compensation and owed commissions.

69. During the meeting, KORSINSKY continued to express his discriminatory beliefs to Plaintiff. He said mothers could not work effectively from home, as his wife had allegedly

performed less well at work after having children and at times needed to work from home, and her boss complained directly to KORSINSKY about her performance.

70.     When KORSINSKY made these sexist statements in or around July 2018, he knew Plaintiff was a mother of two children who regularly worked from home, including on weekends, to effectively balance her work and home lives without any performance problems.

71.     Plaintiff again protested to KORSINSKY that his statements and beliefs were discriminatory, and specifically told him that she found them to be sexist and offensive.

72.     KORSINSKY, angry and annoyed at Plaintiff's complaints about his unlawful behavior, told Plaintiff that he would not provide her with the P/L numbers for the NY Derivative Department, and advised that she was forbidden from obtaining the numbers from anyone else.

*KORSINSKY Withdraws Compliments of Plaintiff:*

73.     Before Plaintiff requested to be paid equally to L&K's male partners, KORSINSKY regularly complimented Plaintiff's outstanding work product. In fact, Shannon Hopkins, a partner in L&K's Connecticut office, informed Plaintiff that KORSINSKY routinely showed clients and prospective clients Plaintiff's work product to demonstrate L&K's ability to handle complex litigation cases.

74.     After Plaintiff requested pay equal to her male counterparts, KORSINSKY stopped complimenting Plaintiff's work despite the fact that such work product remained outstanding. In fact, Plaintiff's co-counsel on various cases continued to compliment her work until the day she was terminated.

75.     Moreover, KORSINSKY was aware of such compliments from Plaintiff's co-counsel as he was copied on many of those emails, including ones from Gregory Nespole,

- 11 -

another white male who L&K hired as a partner to handle some of Plaintiff's cases after she was terminated.

*KORSINSKY Retaliates Against Plaintiff:*

76.     In or around August 2018, despite KORSINSKY's discriminatory delays and refusals, Plaintiff continued to speak with Ms. Mayzus about: (1) finalizing in writing the terms of her Partner compensation, and (2) the discriminatory statements that KORSINSKY made to her.

77.     When Ms. Mayzus tried to follow-up with KORSINSKY on Plaintiff's behalf, KORSINSKY refused to respond.

78.     In or around August 2018, KORSINSKY prohibited Plaintiff from settling a securities class action involving Patriot National, Inc. on behalf of three L&K clients, including a client, Mbago Kaniki, who Plaintiff had retained on Defendant L&K's behalf. Notably, Plaintiff had developed the case's claims and extensively litigated them for nearly two years. KORSINSKY then informed Plaintiff that Mr. Porritt, the Washington, D.C. male Partner, would handle the Patriot National case, instead of Plaintiff, going forward.

79.     KORSINSKY took these actions to prevent Plaintiff from earning a commission from this case.

80.     As a result of KORSINSKY's obvious retaliation for Plaintiff's complaints of his discrimination and failure to be paid equally on account of her sex, familial status and caregiver status, and based on the fact that Plaintiff continued to not receive any commissions, in early December 2018, Plaintiff and Ms. Mayzus discussed the potential bonus that Plaintiff could expect to receive for 2018.

81.     During that early December 2018 discussion, Ms. Mayzus told Plaintiff that in her opinion, a bonus between $140,000.00 and $150,000.00 would be appropriate for Plaintiff for 2018.

*Plaintiff Meets with LEVI and Faces further Discrimination and Retaliation:*

82.     On or around December 14, 2018, LEVI requested a meeting with Plaintiff to discuss her Partner compensation going forward in 2019, and her bonus for 2018.

83.     During the meeting, LEVI discriminatorily told Plaintiff that he believed she had been out of the office a lot recently dealing with family issues.

84.     Plaintiff immediately disputed LEVI and advised that she had been away on a number of business trips, which were reflected in her time and billing records and amounted to a great deal more than Defendant L&K's monthly minimum of 160 hours.

85.     Also, during this December 14, 2018 meeting, LEVI told Plaintiff that her 2018 bonus would be $15,000.00 – half of her 2017 bonus and over $100,000.00 less than Ms. Mayzus' earlier proposal to Plaintiff.

86.     Plaintiff protested that this amount was too low, based on the approximately $2 million in fees that the NY Derivative Department collected in 2018, and the potential of the NY Derivative Department to earn millions of dollars of fees in 2019 and 2020.

87.     Plaintiff suggested that she and LEVI negotiate a mutually agreeable number for her 2018 bonus, as she was aware that Shannon Hopkins, a female Partner and mother of two in Defendant L&K's Connecticut office, had once negotiated a higher number when she believed her bonus to be too low.

88.    LEVI refuted Plaintiff, and told her, in sum and substance, "No, Shannon never would have done that because she knows her place," obviously and in a sexist manner implying that female employees should not discuss compensation with their supervisors.

89.    LEVI further discriminatorily advised Plaintiff that there would be no written contract related to the terms of her compensation, and that they would further discuss compensation in 2019 if any of her cases paid fees, on a case by case basis. Notably, at this time, Plaintiff had multiple cases that were in settlement discussions, including mediations.

90.    As further evidence of Defendants' obvious bias towards women and continuing discrimination and retaliation against Plaintiff, she later learned, in or around March 2019, that Associate Will Fields received a $30,000.00 bonus for 2018, double what Plaintiff earned as a Partner and Mr. Fields' supervisor.

*KORSINSKY Continues to Retaliate Against Plaintiff:*

91.    On or around January 8, 2019, Plaintiff learned from KORSINSKY that Mr. Fields and another of her male Associates, Chris Kupka, would begin handling certain of her complex cases, and such cases would no longer be considered part of her NY Derivative Department.

92.    Although Plaintiff told KORSINSKY that she had been working tirelessly on these cases and wanted to continue handling them, KORSINSKY did not reconsider.

93.    Moreover, given that the cases removed from Plaintiff were scheduled to potentially pay fees in 2019, it was clear to Plaintiff that KORSINSKY, in still more acts of discrimination and retaliation, transferred the cases so that the two male Associates would receive all credit and Plaintiff could not request her duly earned commissions.

94. Despite Messrs. Fields and Kupka taking over the complex cases, they continued to request guidance and assistance from Plaintiff, who was forced to contribute more work to the cases without billing her time.

95. In early 2018, Plaintiff also had multiple discussions with Messrs. Fields and Kupka about how they all believed that KORSINSKY and LEVI made the case transfers to discriminate against Plaintiff due to her sex. They further discussed how KORSINSKY and LEVI were biased towards Plaintiff due to their views on mothers' roles in society. Indeed, it was known that LEVI repeatedly told female attorneys, when they became mothers, that he believed that they should no longer work as attorneys, and instead should stay home to raise their babies.

96. Shortly after the case transfers, on or around January 14, 2019, KORSINSKY decided to change Plaintiff's spacious office into a conference room.

97. When Plaintiff requested to move into a similarly sized office that was vacant, LEVI and KORSINSKY refused and told her to move into a much smaller office.

98. Visiting her smaller office, Plaintiff's L&K colleagues confessed that they believed Defendants were discriminating against her on the basis of sex.

99. In early 2019, aside from informing KORSINSKY and LEVI that they were discriminating against her on the basis of sex, Plaintiff also followed the "Informal Procedure" "Complaint Procedure" provided in L&K's September 2018 Employee Handbook.

100. Specifically, Plaintiff reported KORSINSKY and LEVI's discriminatory actions towards her to L&K partner Shannon Hopkins.

101. Ms. Hopkins acknowledged that KORSINSKY and LEVI were discriminating against her on the basis of sex. Ms. Hopkins, however, advised Plaintiff to "put out feelers" to

find a new job as she explained that she could not help Plaintiff with this issue, and that KORSINSKY and LEVI were biased towards women, especially mothers.

*Plaintiff's Employment with Defendant L&K is Terminated*:

102.    On March 28, 2019, Plaintiff was terminated during a meeting with KORSINSKY and Ms. Mayzus for a number of vague and conclusory reasons, including that she was allegedly looking for a new job.

103.    Plaintiff told KORSINSKY that she was being terminated because she had several cases due to pay lucrative fees in 2019, and KORSINSKY, LEVI and L&K did not want to and had no intention of compensating Plaintiff fairly, in retaliation for her complaints of unlawful sex, familial status and caregiver status discrimination.

104.    During this meeting, KORSINSKY also told Plaintiff that she was not entitled to any earned vacation pay from 2019 because she had worked from home on certain days in 2019. Plaintiff responded that she had billed eight hours or more on every day that she had worked from home in 2019, and was entitled to such pay. Yet, KORSINSKY refused to pay Plaintiff her earned vacation pay.

105.    In fact, Plaintiff later learned from Joanna Cheblus, who worked in L&K's marketing and litigation support departments, that KORSINSKY instructed Ms. Cheblus to track all female attorneys who were mothers when they worked from home in order to deduct that pay from their vacation time, due to his biased belief that mothers cannot effectively work from home. Notably, male attorneys who were fathers, like Mr. Fields, who regularly worked from home to care for his young child because his wife was a nurse with an irregular work schedule, were not subject to the same policy.

- 16 -

106. Finally, during this meeting, KORSINSKY stated that he would pay Plaintiff severance as part of her termination, but that he needed to discuss the specific terms with LEVI. Defendants then failed to do so, forcing Plaintiff to collect unemployment pay while she sought and secured new employment.

*Plaintiff's Termination was Timed to Benefit L&K and Deprive her Commissions on Fees:*

107. Shortly after her termination, on or around March 28, 2019, Mr. Fields confirmed to Plaintiff that KORSINSKY had planned to fire her since approximately January 2019, but kept her employed so she could complete two important arguments in March, before terminating her employment before she could participate in several mediations for her cases, which were scheduled in April and could have provided Plaintiff with more opportunities to earn commissions.

108. In fact, since her termination, several of Plaintiff's cases have announced settlements.

109. For example, at L&K, Plaintiff was in charge of a derivative case involving McKesson Corporation related to the national opioid crisis on behalf of two L&K clients, including Amalgamated Bank, who was Plaintiff's client. Indeed, Plaintiff attended the first mediation session for this case on March 12, 2019. Plaintiff was also scheduled to attend a second mediation session on April 26, 2019 when KORSINSKY terminated her employment. Notably, after the first mediation session, Plaintiff informed KORSINSKY of her expectation that: (1) the case would settle for over $100 million, (2) L&K would be entitled to a significant fee, and (3) she expected a commission from any fee paid to L&K due to her supervision and management of the case, and her client's involvement in the case. On December 27, 2019, the parties announced that this case had settled for *$175 million*, and that seven law firms, including

Case 1:20-cv-01590 Document 1 Filed 02/18/20 Page 18 of 26

L&K, will seek up to **$52.5 *million*** in attorney's fees for their work, which will include Plaintiff's time, in this case.

110.    Plaintiff remains entitled to earn additional commissions on such cases, despite her unlawful termination by Defendants.

*Defendants' Actions are Unlawful and caused Plaintiff Harm:*

111.    Defendants took all the foregoing actions in order to deprive Plaintiff of employment opportunities and other contractual opportunities because of her sex, familial status and caregiver status.

112.    As a proximate result of Defendants' discriminatory conduct towards her, Plaintiff suffered and continues to suffer significant monetary loss and damages.

113.    As a further proximate result of Defendants' actions, Plaintiff suffered and continues to suffer from severe emotional distress, lasting embarrassment, humiliation, and anguish, as well as other incidental and consequential damages and expenses.

114.    Defendants' conduct was outrageous and malicious, intended to injure Plaintiff, and carried out with reckless indifference to Plaintiff's protected civil rights, thereby entitling her to punitive damages.

115.    Plaintiff has no complete, plain, clear, or adequate remedy at law.

### FIRST COUNT AGAINST DEFENDANT L&K
### (Sex/Gender Discrimination under Title VII)

116.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

117.    Defendants subjected Plaintiff to differential terms and conditions of employment because of her sex.

118.    These differential terms and conditions of employment include, but are not limited to:

a. Refusing to provide Plaintiff with a written contract for her compensation as Partner;

b. Refusing to pay Plaintiff commissions on legal fees, as similarly situated male Partners were paid;

c. Paying Plaintiff the same or lower annual bonuses than male Associates under her supervision;

d. Discriminatory statements made on the basis of sex, including that Plaintiff's husband should discuss her compensation on her behalf;

e. Being stripped of handling complex cases that were reassigned to male Associate attorneys with far less experience and who then relied on Plaintiff for advice and guidance,

f. Depriving Plaintiff opportunities to earn additional commissions on cases she handled and;

g. Terminating Plaintiff's employment.

119. All the foregoing actions were taken by Defendants to deprive Plaintiff of employment and other contractual opportunities on account of her sex.

120. Because of Defendants' willful and deliberate actions, and as a proximate cause thereof, Plaintiff has been denied her right to equal employment opportunity in violation of Title VII.

121. As a result, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

**SECOND COUNT AGAINST DEFENDANT L&K**
**(Retaliation Under Title VII)**

122. Plaintiff repeats and realleges each allegation in each numbered paragraph above.

- 19 -

123. Defendant L&K's conduct was retaliation for Plaintiff's complaints of discrimination on the basis of sex, and violated Plaintiff's rights under Title VII.

124. As a result, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## THIRD COUNT AGAINST ALL DEFENDANTS
### (Violation of the Equal Pay Act)

125. Plaintiff repeats and realleges each allegation in each numbered paragraph above.

126. Defendants discriminated against Plaintiff under the Equal Pay Act by paying her lower than similarly situated male colleagues on the basis of her gender, even though she performed similar duties requiring the same skill, effort, and responsibility of male counterparts.

127. Defendants discriminated against Plaintiff by subjecting her to discriminatory pay and other forms of discrimination in compensations in violation of the Equal Pay Act.

128. The difference in pay between male and female employees was not due to seniority, merit, quantity or quality of work, or a factor other than sex, but was due to gender.

129. Defendants caused, attempted to cause, contributed to, or caused the continuation of wage rate discrimination based on gender in violation of the Equal Pay Act.

130. The foregoing conduct constitutes a willful violation of the Equal Pay Act within the meaning of 29 U.S.C. § 225(a), and a three-year statute of limitations applies.

131. As a result of Defendants' conduct, Plaintiff suffered and continues to suffer harm, including but not limited to: lost earnings and lost benefits, as well as humiliation, embarrassment, emotional and physical distress, and mental anguish.

132. By reason of Defendants' discrimination, Plaintiff is entitled to all legal and equitable remedies available for violation of the Equal pay Act, including liquidated damages for all willful violations, prejudgment interest, attorney's fees and costs, and other compensation

- 20 -

pursuant to 29 U.S.C. § 216(b).

## FOURTH COUNT AGAINST ALL DEFENDANTS
### (Retaliation in Violation of the Equal Pay Act, Section 215(a)(3))

133.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

134.    By the acts described above, Defendants retaliated against Plaintiff for her complaints against and resistance to discriminatory and unfair employment practices in violation of the Equal Pay Act.

135.    Because of Defendants' retaliatory conduct, Plaintiff has suffered loss and damage in an amount to be determined at trial.

## FIFTH COUNT AGAINST ALL DEFENDANTS
### (Violation of N.Y. Labor Law § 194)

136.    Plaintiff repeats and realleges each allegation in each numbered paragraph above.

137.    Defendants, employers of Plaintiff within the meaning of the New York Equal Pay Law, discriminated against Plaintiff in violation of New York Labor Law § 194, by subjecting her to unequal pay on the basis of her sex.

138.    Defendants discriminated against Plaintiff by treating her differently from and less preferably than similarly situated male employees who performed jobs which required equal skill, effort, and responsibility, and which were performed under similar working conditions.

139.    Defendants have discriminated against Plaintiff since December 2017 by subjecting her to discriminatory pay and other forms of discrimination in violation of the New York Equal Pay Law.

140.    Defendants caused, attempted to cause, contributed to, or caused the continuation of, the wage discrimination based on sex in violation of the New York Equal Pay Law.

141.    Moreover, Defendants willfully violated the New York Equal Pay Law by

- 21 -

Case 1:20-cv-01390 Document 1 Filed 02/18/20 Page 22 of 26

intentionally paying Plaintiff less than similarly-situated men.

142. Plaintiff is entitled to all remedies available for violations of New York Labor Law § 194, including liquidated damages and attorney's fees and costs.

## SIXTH COUNT AGAINST ALL DEFENDANTS
### (Sex and Familial Status Discrimination in Violation of the NYSHRL)

143. Plaintiff repeats and realleges each allegation in each numbered paragraph above.

144. At all relevant times, Plaintiff was an "employee" within the meaning of the NYSHRL.

145. By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her sex and familial status, Defendants violated the NYSHRL.

146. By reason of the foregoing, Plaintiff has suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

## SEVENTH COUNT AGAINST ALL DEFENDANTS
### (Sex and Familial Status Discrimination in Violation of the NYCHRL)

147. Plaintiff repeats and realleges each allegation in each numbered paragraph above.

148. At all relevant times, Plaintiff was an "employee" within the meaning of the NYCHRL.

149. By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her sex and familial status, Defendants violated the NYCHRL.

150. By reason of the wanton, unrepentant, reckless, and egregious conduct of the defendants herein-above alleged, Plaintiff claims punitive damages under this Count.

151. By reason of the foregoing, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### EIGHTH COUNT AGAINST ALL DEFENDANTS
#### (Caregiver Discrimination in Violation of the NYCHRL)

152. Plaintiff repeats and realleges each allegation in each numbered paragraph above.

153. At all relevant times, Plaintiff was an "employee" within the meaning of the NYCHRL.

154. At all relevant times, Plaintiff was a "caregiver" within the meaning of the NYCHRL.

155. By adversely affecting the terms, conditions and privileges of Plaintiff's employment because of her caregiver status, since 2017, Defendants violated the NYCHRL.

156. By reason of the wanton, unrepentant, reckless, and egregious conduct of the Individual Defendants herein-above alleged, Plaintiff claims punitive damages under this Count.

157. As a result, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### NINTH COUNT AGAINST ALL DEFENDANTS
#### (Retaliation in Violation of the NYSHRL and NYCHRL)

158. Plaintiff repeats and realleges each allegation in each numbered paragraph above.

159. Defendants' above conduct since December 2017 was in retaliation for Plaintiff's complaints of discrimination on the basis of sex, familial status and caregiver status, and violated Plaintiff's rights under NYSHRL and NYCHRL.

160. As a result, Plaintiff suffered loss and damage in an amount to be determined at trial but estimated to be no less than $100,000.00.

### TENTH CAUSE OF ACTION AGAINST DEFENDANT L&K
#### (Breach of Contract)

161. Plaintiff repeats and realleges each allegation in each numbered paragraph above.

162. Under the written rules and policies of Defendant L&K, Plaintiff was entitled to

Case 1:20-cv-01590 Document 1 Filed 02/18/20 Page 24 of 26

three weeks of paid vacation per year.

163. At the time of her termination, Plaintiff was owed unused vacation days that she had accrued.

164. Defendant L&K has failed and refused to pay Plaintiff for her accrued vacation days.

165. As a result, Defendant L&K breached its employment contract with Plaintiff, causing her monetary damages.

## **PUNITIVE DAMAGES**

166. Plaintiff claims punitive damages by reason of the wanton, unrepentant, reckless and egregious conduct of the defendants herein-above alleged.

**WHEREFORE,** Plaintiff prays that this Court grant her judgment containing the following relief:

a. Impanel a jury to hear Plaintiff's claims;

b. An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for her monetary loss and damages, including Plaintiff's loss of past and future earnings, bonuses, compensation, and other employment benefits;

c. An award of damages to compensate Plaintiff for mental anguish, humiliation, embarrassment, and emotional injury for each cause of action;

d. An award of damages in an amount to be determined upon the trial of this matter to compensate Plaintiff for violations of her rights under Title VII, the Equal Pay Act, New York Equal Pay Law, the NYSHRL and the NYCHRL;

e.      An award of punitive damages to be determined at the time of trial for each cause

of action;

f.      An award of reasonable attorney's fees and costs related to Plaintiff's claims under

Title VII, the Equal Pay Act, and the NYCHRL, and;

g.      Such other and further relief as this Court may deem just and proper.


Dated: New York, New York
       February 18, 2020

                                        Respectfully Submitted,


                                        _____
                                        SAMUEL O. MADUEGBUNA, ESQ.
                                        **MADUEGBUNA COOPER LLP**
                                        Attorneys for Plaintiff, AMY MILLER
                                        30 Wall Street, 8th Floor
                                        New York, New York 10005
                                        (212) 232-0155


TO:     LEVI & KORSINSKY LLP
        55 Broadway, 10th Floor
        New York, NY 10006

        EDUARD KORSINSKY
        c/o Levi & Korsinsky, LLP
        55 Broadway, 10th Floor
        New York, NY 10006

        JOSEPH LEVI
        c/o Levi & Korsinsky, LLP
        55 Broadway, 10th Floor
        New York, NY 10006

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK                    Docket No.:
-------------------------------------------------------------------------------------------------------------------
AMY MILLER,

                                              Plaintiff,

            -against-

LEVI & KORSINSKY, LLP, EDUARD KORSINSKY and JOSEPH LEVI,

                                              Defendants.
-------------------------------------------------------------------------------------------------------------------

                        COMPLAINT AND JURY DEMAND

-------------------------------------------------------------------------------------------------------------------
Signature (Rule 130-1.1-a)

_____

Print name beneath
SAMUEL O. MADUEGBUNA, ESQ.

_____


                                Yours, etc.

                        MADUEGBUNA COOPER LLP
                         Attorneys for Plaintiff
                        30 Wall Street, 8th Floor
                       New York, New York 10005
                           (212) 232- 0155


To: All Counsel of Record
Service of the within is hereby admitted on
_____

Attorneys for

                                - 26 -