**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

Case No. 24-CV-81472-DAMIAN-REINHART

In re CELSIUS HOLDINGS, INC.
SECURITIES LITIGATION

CLASS ACTION

_____/

## REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF DEFENDANTS' MOTION TO DISMISS THE AMENDED COMPLAINT

## <u>TABLE OF CONTENTS</u>

**Page**

I.      INTRODUCTION ................................................................................................ 1

II.     ARGUMENT...................................................................................................... 2

        A.      The AC Does Not Plead Scienter........................................................... 2

                i.       The CW allegations fail to support a strong inference of scienter............. 2

                ii.      The AC fails to plead "suspicious" stock sales.......................................... 5

                iii.     Mischaracterizing Defendants' statements does not plead scienter............ 6

                iv.     The core operations doctrine has not been adopted by the Eleventh Circuit and cannot save an otherwise deficient scienter theory. ................. 7

        B.      The AC Does Not Plead an Actionable Misstatement or Omission. ...................... 7

                i.       The AC cannot explain *why* the alleged misstatements are misleading. ..................................................................................................... 7

                ii.      Defendants' statements are protected by the PSLRA's safe harbor. .......... 9

                iii.     The AC cannot state a claim based on puffery. ....................................... 10

III.    CONCLUSION................................................................................................. 10

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Bryant v. Avado Brands, Inc.*,
  187 F.3d 1271 (11th Cir. 1999) ...................................................................................2

*Carvelli v. Ocwen Fin. Corp.*,
  934 F.3d 1307 (11th Cir. 2019) .................................................................................10

*City of Warren Gen. Emps. Ret. Sys. v. Teleperformance SE*,
  No. 23-cv-24580, 2024 WL 2320209 (S.D. Fla. May 22, 2024).................................7

*City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*,
  412 F. Supp. 3d 206 (E.D.N.Y. 2019) .....................................................................3, 10

*Davidco Invs., LLC v. Anchor Glass Container Corp.*,
  No. 04-cv-2561, 2006 WL 547989 (M.D. Fla Mar. 6, 2006) ......................................5

*Druskin v. Answerthink, Inc.*,
  299 F. Supp. 2d 1307 (S.D. Fla. 2004) .......................................................................5

*Edge v. Tupperware Brands Corp.*,
  No. 07-cv-61057, 2023 WL 6310236 (M.D. Fla. Sept. 28, 2023)...............................4

*Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*,
  594 F.3d 783 (11th Cir. 2010) ....................................................................................6

*FindWhat Inv. Grp. v. FindWhat.com*,
  658 F.3d 1282 (11th Cir. 2011) .................................................................................10

*Garfield v. NDC Health Corp.*,
  466 F.3d 1255 (11th Cir. 2006) ...............................................................................7, 9

*Gomez v. Miami-Dade Cnty.*,
  563 F. Supp. 3d 1211 (S.D. Fla. 2021) ......................................................................5

*Harris v. Ivax Corp.*,
  182 F.3d 799 (11th Cir. 1999) ..................................................................................10

*In re 21st Century Holding Co. Sec. Litig.*,
  No. 07-cv-61057, 2008 WL 5749572 (S.D. Fla. Nov. 7, 2008) ..................................4

*In re Aaron's Sec. Litig.*,
  No. 17-cv-2270, 2018 WL 11343741 (N.D. Ga. Sep. 26, 2018)..................................6

*In re KLX, Inc. Sec. Litig.*,
  232 F. Supp. 3d 1269 (S.D. Fla. 2017) .......................................................................9

*In re Teladoc Health, Inc. Sec. Litig.*,
  No. 22-cv-4687, 2025 WL 886934 (S.D.N.Y. Mar. 21, 2025)....................................................6

*Jackson Inv. Grp., LLC v. Thomas*,
  325 F. Supp. 3d 1334 (N.D. Ga. 2017) ....................................................................................8

*Maloney v. Ollie's Bargain Outlet Holdings, Inc.*,
  518 F. Supp. 3d 772 (S.D.N.Y. 2021)......................................................................................3

*Mizzaro v. Home Depot, Inc.*,
  544 F.3d 1230 (11th Cir. 2008) ................................................................................................3

*Police & Fire Ret. Sys. of the City of Detroit v. Axogen, Inc.*,
  No. 19-cv-69, 2020 WL 13547449 (M.D. Fla. Apr. 21, 2020) ...............................................10

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
  551 U.S. 308 (2007)...................................................................................................................2

*Thompson v. RelationServe Media, Inc.*,
  610 F.3d 628 (11th Cir. 2010) ..................................................................................................2

*Verzwyvelt v. Terran Orbital Corp.*,
  No. 24-cv-81191-RLR, 2025 WL 2425081 (S.D. Fla. Aug. 21, 2025) .................................1, 2

## RULES

17 C.F.R. § 240.10b5-1...................................................................................................................6

Federal Rule of Civil Procedure 9(b).........................................................................................8, 9

## STATUTES

Private Securities Litigation Reform Act, 15 U.S.C. § 78u-4(b)........................................... passim

## I.   INTRODUCTION

As set forth in the Motion,  the AC does not clear the "very, very high" bar for pleading securities fraud and should be dismissed.[1]  *Verzwyvelt v. Terran Orbital Corp.*, No. 24-cv-81191-RLR, 2025 WL 2425081, at \*1, 12 (S.D. Fla. Aug. 21, 2025).  Because the AC fails to plead the requisite elements of scienter and falsity, it should be dismissed in its entirety.

First, the AC cannot meet this Circuit's "high standard for establishing scienter," because the AC does not plead that Defendants possessed contemporaneous knowledge contradicting their public statements.  *Id.* at \*12.  The Opposition's claim that Celsius saw snapshots of Pepsi inventory, and therefore knew there was a "glut" that would impact Celsius's future revenue, suffers an obvious conceptual gap: the AC never alleges that Celsius had access to Pepsi's forecast of sales to consumers, and the Opposition concedes this.[2]  Without this, Celsius could not infer that Pepsi had purchased "too much" inventory, even *if* the AC had sufficiently alleged Defendants could see Pepsi's daily can count.  In simple terms, one cannot declare a pantry overstocked without knowing how many guests are expected for dinner.  This pleading failure alone mandates dismissal.  Moreover, attempts to suggest fraud by citing Defendants' trading simply do not save the AC, because it does not plead departure from Defendants' historical trading patterns.

Likewise, the AC fails to plead falsity.  Put simply, Celsius makes energy drinks and sells them to distributor customers like Pepsi ("sell-in"), where they are in turn sold to retail stores and purchased by consumers ("sell-out" or "velocity," tracked by scan data).  The AC alleges that Defendants misled investors into believing that consumer demand mirrored revenue growth.  But the AC's allegations do not support this theory, and the Opposition's efforts to recast these statements as false or misleading also fail.  In fact, Defendants repeatedly distinguished between sales to Pepsi and velocity in their public statements, noting on multiple occasions that velocity had not suffered as a result of the Pepsi partnership.[3]  Similarly, allegations that Celsius failed to

---

[1] Capitalized terms shall have the same meaning set forth in the Motion to Dismiss and Incorporated Memorandum of Law (ECF No. [64]) (the "Motion" or "Mot.").

[2] Memorandum of Law in Opposition to Defendants' Motion to Dismiss (ECF No. [68]) (the "Opposition" or "Opp.") at 16 ("[I]t is irrelevant that **the Complaint does not allege** that the inventory data showed Pepsi's future orders or projected sales.") (emphasis added).

[3] *See* ¶¶ 10, 71, 90 ("[W]hat people have seen is our velocities have really maintained with this massive distribution that Pepsi has been able to get us out to."); *see* Mot. Ex. F, at 8 ("We did gain some distribution . . . and, you know what, I think as we're starting to see velocity increase, that is a really good sign that we're cycling through whatever pipe fills we had for the quarter. So, the

disclose that Pepsi had "frontloaded" inventory are flawed in light of Celsius's transparent reporting of Pepsi's initial inventory build (also referred to as a "pipe-fill"), and its positive impact on Celsius's reported financials.  Thus, based on the "total mix" of information available to the market, there is no basis to infer investors were misled.  *Verzwyvelt*, 2025 WL 2425081, at *11.[4]

This action exemplifies why Congress passed the PSLRA—to heighten the pleading standards as "a check against abusive litigation by private parties." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 313 (2007).  "Congress hoped to put an end to the abuse of the discovery process to impose costs so burdensome that it is often economical for the victimized party to settle."  *Thompson v. RelationServe Media, Inc.*, 610 F.3d 628, 636 (11th Cir. 2010) (internal quotation marks and citations omitted).  For these reasons, and others detailed in the Motion, the AC should be dismissed in its entirety.

## II.      ARGUMENT

### A.      The AC Does Not Plead Scienter.

The AC's scienter allegations sourced from CWs and about stock sales fail to allege "particular facts that give rise to a strong inference that the defendant acted in a severely reckless manner." *Bryant v. Avado Brands, Inc.*, 187 F.3d 1271, 1287 (11th Cir. 1999); (Mot. at 6-13). Scienter must be pled with specificity as to each named defendant, and requires, at minimum, a showing of "an extreme departure from the standards of ordinary care."  *Verzwyvelt, 2025 WL 2425081*, at *12 (citations and internal quotation marks omitted).

#### i.    The CW allegations fail to support a strong inference of scienter.

The Motion established that the AC does not allege that the CWs either learned information that contradicted the Individual Defendants' statements about revenue and velocity or interacted with the Individual Defendants at all.  (Mot. at 6-9).  For this reason, the AC's allegations cannot support a strong inference that each Defendant had knowledge of facts that rendered the challenged statements false or misleading.  (*Id*.).

In response, the Opposition mostly rehashes the CW allegations about Celsius's internal

---

increase in distribution didn't slow the overall velocity.").  Saying that one metric did not decline due to another is markedly different from "conflating" the two.

[4] In addition, the Opposition represents to the Court that, before producing energy drinks, Celsius "sold diet pills, had a run-in with the FTC, and was dogged by allegations of operating as a Pyramid scheme." (Opp. at 2).  Not only is this irrelevant to the present motion (and factually inaccurate), but this accusation is also not supported by the AC, which attributes the same allegations to an unrelated company.  (¶ 38).

reporting but never identifies a report or other information that contradicted the Individual Defendants' public statements.[5] (Opp. at 15-17). The CWs' allegations show, at most, that Celsius was tracking its sales to Pepsi (¶¶ 65-66), and that certain non-party employees at Celsius (not the Individual Defendants) had access to Pepsi's inventory snapshots.[6] (¶¶ 61, 67).

The Motion makes clear, however, that, absent an allegation that defendants had access to information contradicting their public statements, courts reject these "vague assertions" by former employees concerning "access to . . . sell through data, sales numbers, products, and inventory" along with meetings discussing "sales, earnings, and cost trends." *City of Warren Police & Fire Ret. Sys. v. Foot Locker, Inc.*, 412 F. Supp. 3d 206, 228 (E.D.N.Y. 2019) (internal quotation marks omitted); *Maloney v. Ollie's Bargain Outlet Holdings, Inc.*, 518 F. Supp. 3d 772, 781 (S.D.N.Y. 2021) (complaint failed to specify how sales reports contradicted defendants' statements "as is required to show scienter").

Critically, the CWs never allege that Celsius had access to reporting that allowed it to identify a "glut" in Pepsi's inventory, relative to Pepsi's projected sales to its customers. (Mot. at 8). The Opposition asserts it is "irrelevant that the Complaint does not allege that the inventory data showed Pepsi's future orders or projected sales" but never explains why this is so. (Opp. at 16). As a matter of logic, Celsius could not have been aware of a "glut" of product in Pepsi's inventory without knowing Pepsi's projection of consumer demand. A "glut" is not defined by quantity alone; it implies an excess relative to anticipated demand. Without allegations that Defendants had access to or awareness of Pepsi's demand forecasts, broad allegations about Celsius's knowledge of Pepsi's inventory are insufficient to plead scienter. (Mot. at 8).

Attempting to backfill the hole in Lead Plaintiff's theory, the Opposition contends that the "sheer magnitude of unsold product sitting in Pepsi's warehouses . . . supports a strong inference

---

[5] The Opposition cites authority that stands for the unremarkable proposition that allegations by anonymous sources may be considered under the PSLRA. (Opp. at 14-15). This misses the mark. Defendants do not quibble with the credibility of confidential witnesses generally. Rather, the CW allegations here are deficient because they fail to show that Defendants possessed the requisite state of mind concerning the alleged fraud.

[6] Indeed, the only alleged source of "on hand inventory" data—Pepsi's SAP system—is not alleged to have been accessible by the Individual Defendants. (¶ 61). The AC *does not allege* that the Individual Defendants could access this information, that they did access this information, or that they even discussed this information. Nor is there any allegation that CW3 had access to Pepsi's inventory in her purported review of warehouses. These omissions are fatal. *See Mizzaro v. Home Depot, Inc.*, 544 F.3d 1230, 1248 (11th Cir. 2008).

of Defendants' knowledge of a glut." (Opp. at 16). But the Opposition's own assertions on this point are inconsistent with the AC's allegations around Defendants' statements on historical inventory levels. The AC alleges that Celsius disclosed in September 2024 that "sales to Pepsi were $100 million to $120 million lower" than the prior year (¶ 15) and that this amount in sales would be roughly equivalent to 87 million cans. (¶ 17). The Opposition then argues that Pepsi had 87 million cans stacked in warehouses, the "sheer magnitude" of which should have been enough to alert Defendants of the purported "glut." (Opp. at 16). But this is a bridge too far, and an illogical inference to draw. Defendants' disclosure to the market that Pepsi ordered $100 million less in product than the prior year does not mean (and the AC does not allege) that it actually had a volume of cans sitting in its warehouse equal to this dollar value. This is especially apparent when considering Celsius's prior disclosures concerning Pepsi's initial inventory build, or pipe-fill—an unsurprising fact of a new distributor relationship. (Mot. at 15).

Beyond failing to allege contradictory internal reporting (or other information revealing a glut at Pepsi), this Court should disregard the CWs for the simple reason that they do not allege any interaction with the Individual Defendants or even their direct reports, as the Motion showed. (Mot. at 7-8). In response to this point, the Opposition states that "Courts have repeatedly afforded significant weight to confidential witness accounts even when those witnesses were removed from direct interaction with individual defendants." (Opp. at 15). The Opposition offers two cases, both easily distinguishable. For example, in *In re 21st Century Holding Co. Securities Litigation*, the court rejected a CW's allegations—that the CW perceived costs were increasing and discussed that with others—because the complaint failed "to link their discussion to any knowledge of the Defendants." No. 07-cv-61057, 2008 WL 5749572, at *9 (S.D. Fla. Nov. 7, 2008). Although the court ultimately held that the plaintiffs had pled scienter, the complaint alleged conversations between employees and the defendants acknowledging facts contrary to defendants' public statements on loss reserves. *Id.* at *6-8. There is nothing like that here. In *Edge v. Tupperware Brands Corp.*, the other case cited in the Opposition, the complaint included allegations from a high-level former employee, described by the court as a "former employee in upper management." No. 07-cv-61057, 2023 WL 6310236, at *6 (M.D. Fla. Sept. 28, 2023). That former employee had broad authority within the corporate defendant and regularly met with one individual defendant's direct report to discuss the metrics allegedly misstated. *Id*. Here, in contrast, the CWs are much lower level (Mot. at 7), and there are zero allegations of direct communications between the CWs

4

and any Individual Defendants or their direct reports.  (*Id.*).

### ii.   The AC fails to plead "suspicious" stock sales.

As the Motion explains, the AC fails to allege the Individual Defendants engaged in suspicious stock sales, and, thus, their trading has no bearing on scienter.  (Mot. at 9-13).  As a threshold matter, the AC's failure to plead the Individual Defendants' trading history precludes a finding of scienter based on alleged insider sales.[7]  (Mot. at 10).  The Opposition's arguments concerning the timing and amount of the sales do not cure that pleading failure.

As for Mr. Fieldly, the Opposition repeatedly, without justification, omits his stock options when calculating Mr. Fieldly's holdings, thereby mischaracterizing the magnitude of his Class Period sales.  (Mot. at 3, 18).  The fact remains that the AC's allegations show Mr. Fieldly maintained significant Celsius stock holdings (**83%**) through the Class Period, and it would have been illogical for him to knowingly engage in the scheme alleged, only to suffer substantial losses upon the alleged corrective disclosure and subsequent decline in share value.  *See Druskin v. Answerthink, Inc.*, 299 F. Supp. 2d 1307, 1336 (S.D. Fla. 2004) (concluding stock sales by defendant who sold a fraction of its "total holdings" did not contribute to an inference of scienter).

The Opposition attempts to cast the timing of some of his trades as suspicious because they occurred within weeks of alleged misstatements.  (Mot. at 17).  But in the one case cited for that assertion, the court described the trades there as "somewhat suspicious" in timing and amount, but the defendants there sold nearly twice as much as Mr. Fieldly.  *Davidco Invs., LLC v. Anchor Glass Container Corp.*, No. 8:04CV2561T-24EAJ, 2006 WL 547989, at *20 (M.D. Fla Mar. 6, 2006).  Finally, the Opposition contends that Mr. Fieldly's decision not to adopt a 10b5-1 trading plan during the Class Period "weighs in favor of scienter," because his past use of one demonstrated his awareness of the "ability to shield himself from liability by following such a plan."  (Opp. at 18).  The Opposition cites no authority for this; it also makes no sense.  Merely because a trading plan shields an executive from insider trading claims, it does not follow that a decision not to adopt one raises an inference of scienter.  Nor does the absence of a plan alleviate Lead Plaintiff's burden to plead sufficient information for the Court to determine "whether the level of trading is

---

[7] Because Lead Plaintiff also failed to respond to any of Defendants' arguments concerning trading activity by non-defendants, those allegations have been abandoned.  *Gomez v. Miami-Dade Cnty.*, 563 F. Supp. 3d 1211, 1218 (S.D. Fla. 2021) (noting that claims raised in a complaint but not defended in an opposition to a motion to dismiss are deemed abandoned in this district).

dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information." *Edward J. Goodman Life Income Tr. v. Jabil Cir., Inc.*, 594 F.3d 783, 793 (11th Cir. 2010) (internal quotation marks omitted).

As for Messrs. Langhans and David, the Opposition simply regurgitates the AC's allegations (Opp. at 19-20), except Lead Plaintiff admits to miscalculating Mr. Langhans's trades. (Opp. at 20 n.20).  Thus, Lead Plaintiff concedes 80% of the trades attributed to Mr. Langhans in the AC were either attributed to him in error or undertaken to pay tax obligations.[8]  (Mot. at 12). Finally, the Motion established that Mr. David made one trade for tax purposes, and the timing of the other alleged trade is inherently not suspicious.  (Mot. at 12).

### iii.  Mischaracterizing Defendants' statements does not plead scienter.

The Opposition alleges Defendants' own statements demonstrate scienter.  (Opp. at 13). To make this point, the Opposition repeatedly quotes Mr. David's statement that Pepsi was holding "several million more cases over the past 1.5 years than they really needed to hold." (¶ 124).  But this expresses Mr. David's opinion with the full benefit of hindsight and sheds no light on Defendants' view, during the Class Period, of Pepsi's inventory levels.  *In re Aaron's Sec. Litig.*, No. 17-cv-2270, 2018 WL 11343741, at *7 (N.D. Ga. Sep. 26, 2018) (reliance on statements defendants made at the end of the class period amounted to fraud by hindsight and failed to plead scienter).  Other than this, the Opposition revisits statements in which the Individual Defendants expressed, at most, an awareness of Pepsi's historical inventory (¶¶ 61, 101, 105, 117, 118) or optimism concerning Pepsi's ability to maintain sufficient inventory to service retailers (¶ 108). None of these statements demonstrate a real-time knowledge of an alleged "glut" of inventory in Pepsi warehouses, much less show how Defendants could have known that Pepsi would reduce orders of product from Celsius in the future.

---

[8] The Court should reject Lead Plaintiff's arguments splitting hairs over the coding of Form-4 SEC filings.  The Opposition cites no authority for its assertion that the Court cannot take notice of Form-4 disclaimers at the motion to dismiss stage, but authority does support this Court taking judicial notice of the disclaimers concerning tax sales.  *See, e.g., In re Teladoc Health, Inc. Sec. Litig.*, No. 22-cv-4687, 2025 WL 886934, at *10 (S.D.N.Y. Mar. 21, 2025) ("The Forms 4 submitted by the defendants, of which the Court may take judicial notice, show that almost all their sales that were not pursuant to Rule 10b5-1 plans were made to cover tax obligations.  Such sales are not suspicious, and do not contribute to an inference of scienter.").

#### iv. The core operations doctrine has not been adopted by the Eleventh Circuit and cannot save an otherwise deficient scienter theory.

Lead Plaintiff's resort to the core operations doctrine in the Opposition also fails. (Opp. at 20). As the Opposition's own cited authority recognizes, the "Eleventh Circuit has never adopted" this doctrine, and "it very rarely can create a strong inference of scienter on its own," and has been used in limited instances to support otherwise sufficient scienter allegations. *City of Warren Gen. Emps. Ret. Sys. v. Teleperformance SE*, No. 23-cv-24580, 2024 WL 2320209, at *18 (S.D. Fla. May 22, 2024) (citations omitted). Because the AC's scienter allegations are entirely deficient for all the reasons discussed *supra*, the core operations doctrine has no application here.[9]

Because the AC fails to plead scienter for the foregoing reasons and all the reasons discussed in the Motion, that is a sufficient basis alone to dismiss the AC in its entirety.

#### B.        The AC Does Not Plead an Actionable Misstatement or Omission.

Even if the Court undertakes a statement-by-statement analysis of each alleged misstatement, the Motion established that the AC should be dismissed because it does not coherently allege falsity, relies on forward-looking statements protected by the PSLRA, and includes non-actionable puffery. (Mot. at 13-20).

#### i.        The AC cannot explain *why* the alleged misstatements are misleading.

The Motion demonstrates that the AC's failure to "specify each statement alleged to have been misleading [and] the reason or reasons why the statement is misleading" mandates dismissal. *See Garfield v. NDC Health Corp.*, 466 F.3d 1255, 1262 (11th Cir. 2006) (citing 15 U.S.C. § 78u-4(b)(1)); (Mot. at 18-20). Instead of pointing to well-pled allegations satisfying this requirement, the Opposition asks this Court to relax the relevant pleading standard based on a misreading of a decision addressing the level of detail required to plead a material misstatement. (*See* Opp. at 4) (citing *Teleperformance SE,* 746 F. Supp. 3d at 1407). *Teleperformance* does not stand for the proposition that a complaint can plead a securities fraud claim without alleging the specific reasons why each statement was misleading. Instead, the *Teleperformance* court found that defendants had confused the scienter and falsity pleading standards. 746 F. Supp. 3d at 12.

---

[9] In addition, to bridge the scienter gap, the AC must show that Defendants knew or were reckless concerning information about ***Pepsi's*** operations (namely, plans for future orders), as Pepsi's reduction in orders is what the AC alleges caused a decline in share value. (¶¶ 124, 128). Thus, claiming Defendants had generalized knowledge of ***Celsius's*** own operations cannot establish scienter under the AC's alleged scheme.

7

Lead Plaintiff cannot avoid the black-letter law that securities fraud claims must satisfy the pleading requirements of Rule 9(b) and the PSLRA, and must be pled "in detail," including the "who, what, when, where, and how." *Jackson Inv. Grp., LLC v. Thomas*, 325 F. Supp. 3d 1334, 1345-46 (N.D. Ga. 2017). As explained in the Motion, the AC must be dismissed because it cannot plead *why* the challenged statements were false under its own theory of fraud. (Mot. at 18-20).

**Defendants did not "conflate" sales to Pepsi with sales to consumers.** The Opposition doubles down on the allegation that Defendants "misleadingly correlated sell-in to sell-out, tricking investors that sell-in was supported by consumer demand." (Opp. at 5.) But the Opposition cannot identify a *single* challenged statement linking the two metrics in a way that would give a reasonable investor a mistaken impression. Indeed, the May 9, 2023 statement the Opposition references (Opp. at 7) fails to state, or even suggest, that sales to Pepsi and velocity moved at the same rate. (Mot. at 19). At most, the challenged statements show that Defendants were discussing with the market the fact that increased distribution did not negatively impact or otherwise "slow the overall velocity," thereby explicitly distinguishing between these two metrics by acknowledging the possibility of a negative relationship between the two. (¶¶ 10, 71, 72). The fact that Defendants disclosed to the market that expanding Celsius's distribution program did not slow velocity is not the same as saying that these two metrics were the same, or that velocity was being maintained at the same rate as sales to Pepsi. In addition, Celsius's disclosures consistently reference third-party scanner data tracking sales to consumers (i.e., velocity), separate and apart from Celsius's reports of its revenue. (*See, e.g.,* Mot. Ex. F at 3, Ex. G at 3, Ex. H at 3).

In addition, Defendants' disclosures around revenue recognition and Pepsi's inventory building are relevant because they undermine the very notion that the market was confusing "sell in" to Pepsi versus ultimate sales to consumers. As the Motion demonstrates, Celsius repeatedly disclosed that it recognized sales revenue from Pepsi at the time of delivery to Pepsi, and that Pepsi was building inventory, or engaging in a "pipe-fill," following the implementation of the Distribution Agreement.[10] (*See* Mot. at 14-15). When considered in the context of these robust

---

[10] The Opposition continues to cite the statement that sales were "not really a pipe fill" out of context to argue that Defendants misled the market. (Opp. at 1, 3, 5-6, 12). This statement was made in response to the following analyst question about the foodservice industry specifically: "I just want to drill *into the foodservice commentary* you guys had. If I heard you correctly, that was 10% of sales in the quarter. And I'm just wondering maybe what the impact, as Pepsi kind of brought in that inventory to sell, what that – *what the pipe fill for foodservice might have been* in

disclosures, there is no basis to conclude that the purported misstatements were misleading or that any supposed omissions around an alleged "glut" were material. *See In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d 1269, 1276 (S.D. Fla. 2017). The market clearly understood these two metrics were separate, and the AC's attempt to manufacture confusion as a basis for fraud fails.

***The "glut" theory fails***. As the Motion explains, the AC undermines its theory that Defendants' statements were misleading because they failed to disclose that Pepsi's infilling was driving revenue (¶¶ 69-72, 78, 102-03, 108-10) because the AC fails to identify ***when*** during the Class Period this infilling allegedly created a glut and ***when*** a risk of declining revenue arose. (Mot. at 18). The AC alleges that Pepsi "had already completed or was in the height of infilling its inventory" by May 2023. (¶¶ 70, 72); (Mot. at 18). Thus, under the AC's own theory, revenue should have ***decreased*** from May 2023 forward. It did not. The AC acknowledges that Celsius reported "record revenue" throughout the last two quarters of 2023 (¶ 94), and there is no dispute that Celsius accurately recorded revenue for sales to Pepsi. (Mot. at 14-15). Rather than resolve this contradiction, the Opposition stubbornly continues to advance it. The Opposition states in a footnote that although May 2023 was the "height of infilling," the "majority" of Pepsi's ordering occurred "around or after May 2023." (Opp. at 5 n.5). These two representations are plainly at odds. The Opposition cannot cure this internal pleading inconsistency that invalidates the AC's entire theory surrounding the alleged misstatements.

***The AC's failure to plead falsity allegations for certain challenged statements mandates dismissal.*** The Opposition acknowledges that the AC does not explain the falsity of the statements in Paragraphs 94 or 95 but asserts that they were "false for the same reasons" the other challenged statements were false. (*See* Opp. at 5 n.4). This fails the particularized pleading standards of Rule 9(b) and the PSLRA. *See Garfield*, 466 F.3d at 1262. These statements should be dismissed.

### ii. Defendants' statements are protected by the PSLRA's safe harbor.

As discussed in the Motion, the AC's allegations are based on forward-looking statements because, under its own theory of fraud, Defendants misled investors about the likelihood that

---

1Q." (*See* Mot. Ex. F at 12) (emphasis added). In the same call, Defendants discussed a "pipe-fill" to Pepsi as a whole, consistent with their other disclosures on Pepsi's inventory build. (*Id*. at 8). ("It's hard to say exactly what the pipe-fill was. We did talk about in the quarter how we saw Pepsi increase inventory levels."); (Mot. at 15-16). When an allegation "mischaracterizes the plain language of the actual disclosures," as here, it "need not be credited." *In re KLX, Inc. Sec. Litig.*, 232 F. Supp. 3d at 1276; (Mot. at 19).

consumer demand would sustain *future* sales to Pepsi. (*See* Mot. at 16-18). These allegations fail because the PSLRA provides a safe harbor from liability for forward-looking statements. *See Harris v. Ivax Corp.,* 182 F.3d 799, 803 (11th Cir. 1999). In response, the Opposition asserts that Defendants misrepresented the present growth rates of sell-in and sell-out, not projected revenues. (Opp. at 9). But this contradicts the AC's allegation that "***Defendants misled investors about*** the one-time nature of Pepsi's oversized purchases of Celsius product and ***the lack of sustainability of Celsius's future growth*** that resulted therefrom." (¶ 169). Statements addressing future growth are expressly protected. *See Police & Fire Ret. Sys. of the City of Detroit v. Axogen, Inc.*, No. 19-cv-69, 2020 WL 13547449, at \*14 (M.D. Fla. Apr. 21, 2020) (safe harbor applied to statements not alleged "to be false on their own, but to be misleading due to the context in which they appear as part of the explanation underlying a forward-looking projection"). Attempting to distinguish this authority, the Opposition cites a decision in which the court deemed "general cautionary or risk disclosing language" as insufficient to invoke the PSLRA's safe-harbor provision. *FindWhat Inv. Grp. v. FindWhat.com*, 658 F.3d 1282, 1299 (11th Cir. 2011). But, here, the Opposition does not dispute that Celsius's cautionary disclosures cover the challenged statements. Accordingly, these statements are inactionable and should be dismissed.

### iii.  The AC cannot state a claim based on puffery.

Many of the alleged misstatements were inactionable puffery. (Mot. at 20). The Opposition does not address the weight of authority finding nearly identical phrases to be expressions of corporate optimism. *See, e.g., Foot Locker, Inc.*, 412 F. Supp. 3d at 223-24 (descriptions of relationships with "world-class" vendors were puffery); *see also Carvelli v. Ocwen Fin. Corp.,* 934 F.3d 1307, 1321 (11th Cir. 2019) (rejecting argument that statements of corporate optimism were otherwise material). Accordingly, the Court should dismiss many of the alleged misstatements on this independent basis.

### III.  CONCLUSION

The AC is undercut by its inconsistent allegations, failure to plead any coherent theory of fraud, and Celsius's robust disclosures. The AC should be dismissed in its entirety with prejudice.

Date: September 5, 2025

Respectfully submitted,

**JONES FOSTER P.A.**


*BY /s/ Scott G. Hawkins*
SCOTT G. HAWKINS
Florida Bar No. 460117
505 South Flagler Drive
Suite 1100
West Palm Beach, Florida 33401
Telephone: (561) 659-3000
SHawkins@jonesfoster.com

   and

*Additional Counsel (Admitted Pro Hac Vice)*

**ALSTON & BIRD**
JOSEPH G. TULLY
ELIZABETH GINGOLD CLARK
COURTNEY QUIRÓS
1201 West Peachtree Street, Suite 4900
Atlanta, Georgia 30309
Telephone: (404) 881-7000
Facsimile: (404) 881-7777
joe.tully@alston.com
elizabeth.clark@alston.com
courtney.quiros@alston.com

*Attorneys for Defendants Celsius Holdings, Inc., John Fieldly, Jarrod Langhans, and Toby David*

11

## CERTIFICATE OF SERVICE

I hereby certify that on September 5, 2025, I caused the foregoing to be filed electronically with the Court's Case Management/Electronic Filing System ("CM/ECF").  Notice of this filing was sent to all parties of record by operation of the Notice of Electronic Filing System, and the parties to this action may access the filing through CM/ECF.


*/s/ Scott G. Hawkins*
SCOTT G. HAWKINS


#6969206 v2 33851-00001